## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

MATTHEW PAPANIA,

     Plaintiff,

     v.

UNITED STATES OF AMERICA,

     Defendant.

Case No. 2:22-cv-527

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant United States of America's Motion for Summary Judgment. ECF Nos. 44 (motion), 45 (memorandum). The Court has considered the arguments in the parties' briefing and concluded there is no need to hold a hearing on the motion. *See* Fed. R. Civ. P. 18; E.D. Va. Civ. R. 7(J). For the reasons stated herein, the motion is **GRANTED.**

## I.    BACKGROUND

The following facts are undisputed.[1]

1.    In June 2021, Plaintiff Matthew Papania was the Second Officer on the USNS Sisler, a cargo vessel that the United States owned but that Patriot Contract Services, LLC operated and managed. ECF No. 45 (Defendant's Statement of Facts

---

[1] For the sake of brevity, the Court has only included facts here that are either (1) necessary to resolve the motion on the grounds discussed below in Part III, or (2) helpful to provide the reader with facts of the case.

("DSOF")) ¶¶ 2,4; ECF No. 17 (Plaintiff's First Amended Complaint ("FAC")) ¶¶ 9, 17.[2]

2.      Diego Garcia is an island in the Indian Ocean with a joint United States-United Kingdom military base. ECF No. 45 (DSOF) ¶ 5. The U.S. Navy Support Facility Diego Garcia operates a Branch Health Clinic ("the Clinic") whose parent command is the United States Naval Hospital in Yokosuka, Japan. *Id.* The Clinic is staffed with two Navy medical doctors, two nurses, several Navy corpsman,[3] and other medical support staff. *Id.*

3.      The Department of Defense implemented a Patient Movement System designed to "safely transport members of the uniformed services and other eligible beneficiaries or designated personnel to the appropriate role of care." ECF No. 45 (DSOF) ¶ 3.[4] As a part of this system, the Navy adopted a Standard Operating

---

[2] The FAC is not verified, and therefore, the Court cannot use it as substantive evidence when considering a motion for summary judgment. *Goldman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (noting the rule that the non-movant cannot rely on an unverified unsworn complaint in responding to a motion for summary judgment). However, in his response in opposition, the plaintiff's statement of facts did not include many facts relevant to the summary judgment motion. For example, the plaintiff offers the Court few facts, if any, on the extent and severity of the plaintiff's injuries. *See* ECF No. 56 ¶¶ 1–13. "The responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court," and the Court is not willing to step in to pinch-hit for plaintiff's counsel. *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). But the Court is willing to look to the FAC solely for the purpose of demonstrating that these facts are not in dispute.

[3] A Navy corpsman assists health care professionals in providing medical care to Navy personnel and their families.

[4] Although the plaintiff asserts that he "disputes" the assertions in paragraphs 3, 13–14, and 18, the plaintiff did not specifically dispute any of the facts asserted in these paragraphs. ECF No. 56 at 2–3. Rather, the plaintiff seeks to add additional details

Procedure for Aeromedical Evacuation for Diego Garcia ("SOP"). *Id.*; ECF No. 56 (Plaintiff's Statement of Facts ("PSOF")) ¶ 10 (stating that the defendant maintained a plan for purposes of medical evacuation).

4.      Under the SOP, patient evacuation "was dictated by patient precedence," which was determined by category—either routine, priority, or urgent. ECF No. 45 (DSOF) ¶ 3. The Medical Officer determined the need for medical evacuation and the appropriate precedent category. *Id.* If the Medical Officer determined a need for evacuation, it would have to be approved by the command. *Id.* The policy covered all active-duty personnel and merchant mariners. *Id.*

5.      On the evening of June 26, 2021, the plaintiff arrived at a bar onshore. ECF No. 45 (DSOF) ¶ 6; ECF No. 56 (PSOF) ¶ 1. Soon after arriving at the Brit Club, the plaintiff was involved in an altercation with an off-duty British officer and other British nationals. *Id.* As a result, he suffered injuries, including a swollen left eye with facial lacerations. ECF No. 45 (DSOF) ¶ 45; ECF No. 17 (FAC) ¶ 11.

6.      The plaintiff was transported via ambulance to the Clinic where two Navy doctors treated him. ECF No. 45 (DSOF) ¶ 4; ECF No. 17 (FAC) ¶ 12. The doctors performed a clinical exam and checked for retrobulbar hematoma, orbital blowout fracture, and other potential complications. ECF No. 45 (DSOF) ¶ 4. Both doctors reviewed the plaintiff's X-rays and determined that there were no obvious

---

or information. *Id.* As a result, the Court considers the facts undisputed. *See* Fed. R. Civ. P. 56(e)(2).

fractures. As a result of their examination, the doctors determined that medical evacuation was not necessary. *Id.*

7.      After spending the night at the Navy Gateway Inn and Suites, the plaintiff returned to the USNS Sisler the following morning. ECF No. 45 (DSOF) ¶ 8; ECF No. 17 (PSOF) ¶ 2. At the time, the plaintiff did not have any documentation from the Clinic regarding his fitness for duty. *Id.*

8.      On Monday, June 28, 2021, the USNS Sisler's captain, Mike Lee, contacted Navy Corpsman Elizabeth Richeal via email. ECF No. 45 (DSOF) ¶ 9. Captain Lee and Navy Corpsman Richeal had previously communicated about the plaintiff's injuries. *Id.* Captain Lee advised Corpsman Richeal that the USNS Sisler would be getting underway and asked "if [the plaintiff] should have a check-up." *Id.* Corpsman Richeal responded that the plaintiff "should be fine to be underway and [the Clinic] will see him on July 6th" unless he showed signs of infection. *Id.* Captain Lee did not receive written documentation regarding the plaintiff's fitness for duty. *Id.*

9.      The USNS Sisler went out to sea on Thursday, June 29, 2021, and returned on June 30, 2021. ECF No. 45 (DSOF) ¶ 11. During the period of June 27 to June 30, 2021, the plaintiff stood his second mate's watch. *Id.*; ECF No. 56 (PSOF) ¶¶ 2–3. The plaintiff told Captain Lee that he was able to stand his watch. ECF No. 45 (DSOF) ¶ 11.

10.     On June 30, 2021, Captain Lee received a medical report from the Clinic indicating that the plaintiff was not fit for duty for seven days. ECF No. 45 (DSOF)

¶ 12; ECF No. 56 (PSOF) ¶ 3. Captain Lee scheduled a follow-up examination for the plaintiff because of the discrepancy between the report and his conversations with the corpsman. ECF No. 45 (DSOF) ¶ 12–13; ECF No. 56 (PSOF) ¶ 4.

11.     Captain Lee also advised the plaintiff of his not fit for duty status. ECF No. 45 (DSOF) ¶ 12. During this conversation, the plaintiff expressed concerns about the extent of damage to his eye and requested a follow-up appointment as soon as possible. *Id.*

12.     The plaintiff went to the Clinic for his follow-up appointment on July 1, 2021. ECF No. 45 (DSOF) ¶ 13; ECF No. 17 (FAC) ¶ 12. The Clinic doctor testified that the plaintiff's injury was healing in the manner she expected, his visual acuity had improved, and the swelling had greatly reduced. *Id.* The plaintiff also reported that he experienced "dizziness, lightheadedness w[ith] mental fog, photosensitivity, nausea [without] vomitus, and blurry vision." *Id.* Based on her examination, she deemed the plaintiff fit for light duty for three days and found that medevac was not warranted. ECF No. 45 (DSOF) ¶ 13; ECF No. 56 (PSOF) ¶ 11.

13.     The plaintiff returned to the Clinic for another appointment on July 12, 2021. ECF No. 45 (DSOF) ¶ 14; ECF No. 17 (FAC) ¶ 12. The plaintiff informed the Clinic doctor that his symptoms had improved, but that he still had blurry vision in his left eye when looking up and sharp pain when moving his left eye too quickly. *Id.* During this appointment, the plaintiff requested to see a specialist when he returned

to the United States.[5] ECF No. 45 (DSOF) ¶ 14; ECF No. 56 (PSOF) ¶ 8. Based on her examination, the Clinic doctor released the plaintiff fit for duty. ECF No. 45 (DSOF) ¶ 14.

14.     The plaintiff arrived in the United States on or about July 30, 2021. ECF No. 45 (DSOF) ¶ 15. Dr. Daniel K. Ferguson, an ophthalmologist, examined him on August 12, 2021. *Id.* Dr. Ferguson ordered a CT scan, which revealed that the plaintiff had an "orbital floor fracture," and referred the plaintiff to Dr. Neda Esmaili, an ophthalmic plastic and reconstructive surgeon. *Id.*; ECF No. 17 (FAC) ¶ 21.

15.     At this time, the plaintiff was experiencing double vision because of limited motility in his left eye. ECF No. 45 (DSOF) ¶ 16. When he looked up, his left eye would come out of alignment with the right and cause double vision. *Id.*

16.     Dr. Esmaili performed surgery to repair the plaintiff's orbital floor fracture. ECF No. 45 (DSOF) ¶ 18; ECF No. 17 (FAC) ¶ 21. After the surgery, Dr. Esmaili found that the plaintiff had full motility of the left eye. ECF No. 45 (DSOF)

---

[5] The plaintiff avers that he requested to see a specialist. ECF No. 56 at 12. To support this argument, the plaintiff cites to a declaration submitted in connection with his response in opposition, wherein he states that he "repeatedly requested [to] see a specialist because [he] was worried that [his] eye would be permanently damaged." ECF No. 56-6 ¶ 8. However, in his deposition, the plaintiff testified that he told Captain Lee he "wanted to see a specialist when [he] got home." ECF No. 45-3 at 89. And when asked whether he told anyone that he needed to go home right away, the plaintiff answered no. *Id.* at 90. "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). Thus, the Court finds that it is undisputed that the plaintiff requested to see a specialist when he returned to the United States.

¶ 18. However, the plaintiff continued to state that he was experiencing a "small amount of [double vision]." *Id.*

17.    "Tethering" resulting from scar tissue caused loss of motility. ECF No. 45 (DSOF) ¶ 17. Two types of scar formation can occur after eye trauma. *Id.* The first, "tearing of the tissue," occurred when the plaintiff was hit. *Id.* The other could result from soft tissue being caught in the floor fracture. *Id.* Surgery within three weeks of initial injury can prevent this type of scar tissue from forming. *Id.*

## II.    LEGAL STANDARDS

### A.    Standard of Review

"The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "A fact is 'material' if proof of its existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Id.* "[A]ll justifiable inferences" must be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255.

However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## B.   Sovereign Immunity

The plaintiff filed this suit pursuant to the Jones Act[6] and the Suits in Admiralty Act ("SIAA"). The SIAA waives the United States's sovereign immunity for *in personam* admiralty suits. *Wu-Tien Li-Shou v. United States*, 777 F.3d 175, 183 (4th Cir. 2015). Unlike the Federal Torts Claim Act ("FTCA"), the SIAA does not contain an explicit discretionary function exception to the scope of its waiver. *Id.* at 184. However, the Fourth Circuit has held based on separation-of-powers concerns, that the "SIAA must be read to include a discretionary function exception to its waiver of sovereign immunity." *McMellon v. United States*, 387 F.3d 329, 349 (4th Cir. 2004) (en banc).

The discretionary function exception prevents courts from hearing claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Wu Tien Li-Shou*, 777 F.3d at 184.[7] The Supreme Court has adopted a two-step inquiry for determining whether the United States retains sovereign immunity for

---

[6] The Jones Act applies to the United States through the Suits in Admiralty Act ("SIAA"). *Carleno v. Marine Trasport Lines, Inc.*, 317 F.2d 662, 665 n.1 (4th Cir. 1963).

[7] When applying the implied discretionary function exception in an admiralty case, courts "look to FTCA cases for guidance." *Wu Tien Li-Shou*, 777 F.3d at 184. Thus, the standard for the FTCA and the SIAA discretionary function exception is the same.

the challenged conduct under the discretionary function exception. *Berkowitz v. United States*, 486 U.S. 531, 536–37 (1988).

First, courts determine whether the conduct is discretionary, or rather, "the product of judgment or choice." *Berkowitz*, 486 U.S. at 536. If an employee has "no rightful option but to adhere" to a federal statute, regulation, or policy, then the discretionary function exception will not apply because "there is no discretion in the conduct for the . . . exception to protect." *Id.*

If the challenged conduct is discretionary, then, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkowitz*, 486 U.S. at 537. Specifically, the challenged conduct must be based on public policy considerations. *See United States v. Gaubert*, 499 U.S. 315, 324 (1991) (explaining that "when established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising discretion"). If both prongs are met, courts lack subject-matter jurisdiction. *See Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995).

## C.    Negligence Under the Jones Act

The Jones Act, 46 U.S.C. § 30104, provides a cause of action in negligence for a seaman who is injured in the course of their employment. *Dise v. Express Marine, Inc.*, 476 F. App'x 514, 518 (4th Cir. 2011) (unpublished). To prevail on a claim of negligence against an employer under the Jones Act, a seaman-plaintiff must establish:

(1) that they suffered injury in the course of their employment;

(2) negligence by the employer or an officer, agent, or employee of the employer; and

(3) that their employer's negligence caused their injury at least in part.

*Martin v. Harris*, 560 F.3d 210, 216 (4th Cir. 2009).

### D.  Maintenance & Cure

Under general maritime law, a seaman is entitled to maintenance and cure at the expense of the vessel. *Martin*, 560 F.3d at 221. Maintenance "is the right to sustenance and unearned wages for the period from the onset of the injury to the end of voyage." *Id*. Cure "is the right to medical care until the seaman reaches the point of maximum cure." *Id*. An award for maintenance and cure is independent of any recovery under the Jones Act, and the obligation arises under maritime law whenever the seaman is injured, "regardless of any negligence or fault on the part of the owner of employer." *Id*.

## III.  ANALYSIS

### A.  Sovereign Immunity

The plaintiff's suit contains a variety of allegations forming the basis of his Jones Act negligence, unseaworthiness, and maintenance and cure claims. For the reasons discussed below, the plaintiff's claims based on Captain Lee's decision not to order medical evacuation under the SOP, the defendant's failure to properly staff the USNS Sisler, and the defendant's failure to properly train and supervise its crew are barred by sovereign immunity. The Court will address each claim in turn.

> i. ***The plaintiff's claims based on Captain Lee's decision not to order medical evacuation are barred by sovereign immunity.***

To the extent the plaintiff's Jones Act negligence claim is based upon Captain Lee's decision not to order medical evacuation, it is barred by sovereign immunity.

First, the conduct is discretionary, or rather, "the product of judgment or choice."[8] *Berkowitz*, 486 U.S. at 536. The SOP governs medical evacuation from Diego Garcia. ECF No. 45-1. The procedures are "designed to facilitate the movement of patients from the area of injury or disease to an area of care that has the capability of handling treatment required for the patient." *Id.* at 3. The SOP indicates that routine medevac requests "must be placed by the provider." ECF No. 45-1 at 3. In other words, a doctor must decide—based on their examination of the patient— whether a medical evacuation is necessary. That determination involves an element

---

[8] The plaintiff alleges that the discretionary function is not applicable here because "it is well settled that a shipowner has a legal obligation to provide prompt and adequate medical care to its seamen." ECF No. 68 at 4. It cannot be true that because a shipowner owes a legal duty to its seaman that the discretionary function exception is not implicated. It is a basic tenant of tort law that to establish a negligence claim a plaintiff must establish that the defendant owed them a duty of care. If the plaintiff is correct, then any time an individual can establish that a government employee owed them a legal duty, the discretionary function is not implicated. That theory would render the discretionary function exception pointless because it would only operate in meritless cases. *See, e.g.*, *Wood v. United states*, 845 F.3d 123, 126, 132 (4th Cir. 2017) (finding that the discretionary function exception applied when the plaintiff-employee alleged that the Navy negligently maintained its training facilities); *see Gaubert*, 499 U.S. at 323 ("Actions taken in furtherance of the [discretionary function] were likewise protected, even if those actions were negligent."); *see also Barnett v. United States*, 650 F. Supp. 3d 412, 427 (D.S.C. 2023) ("The discretionary function exception to the FTCA and SIAA is a difficult area of law because it challenges typical notions of liability. Under the discretionary function exception, exposure to liability is based, not upon negligence, but upon questions of 'public policy.'").

of judgment, and the policy explicitly gives medical providers the discretion to make that decision. *See* ECF No. 45-2 at 8–10 (stating that the doctor "would determine whether or not the patient was stable" and if the patient's condition "was to the point that [the Clinic doctors] thought somebody required urgent or routine medevac"). Because there is no federal statute, regulation, or policy prescribing a specific course of action for the employee to follow, the first prong of the test is satisfied. *See Barnett v. United States*, 650 F. Supp. 3d 412, 428 (D.S.C. 2023) ("[T]he first tier of this analysis is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of conduct for an employee to follow.") (quotation marks and citation omitted).

Second, "the judgment is of the kind that the discretionary function exception was designed to shield." *Berkowitz*, 486 U.S. at 536. "When a government policy as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 490 U.S. at 324. The United States had policies and procedures in place governing medical evacuation from Diego Garcia, and Captain Lee complied with those policies. When a government regulation "mandates a particular conduct" and "the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies, which led to the promulgation of the regulation." *Id.* Thus, the United

States cannot be held liable for Captain Lee's compliance with the SOP, because it falls within the discretionary function exception.[9]

> ### ii. The plaintiff's claims based on the United States's failure to properly staff the USNS Sisler are barred by sovereign immunity.

To the extent the plaintiff's claims are based on the United States's failure to properly staff the USNS Sisler, those claims are barred by sovereign immunity.[10] General staffing decisions are discretionary. *See Robles v. United States*, No. 2:19-cv-111, 2021 WL 9869319, at *10 (E. D. Va. Sept. 14, 2021) ("[S]uch manning decisions are left to the discretion of the government after considering applicable laws, regulations, and other factors."). There is no evidence in the record demonstrating that the defendant violated any applicable laws or regulations. And staffing decisions are grounded in the type of policy that the discretionary function is designed to protect. *Id.*

---

[9] This does not mean that the plaintiff cannot allege that the care he received that led to this decision was negligent. *See Nellson v. Doe*, No. 21-6206, 2023 WL 3336689, *6 n.2 (4th Cir. May 10, 2023) (unpublished) (permitting a medical negligence claim under the FTCA). The Court will address those claims on the merits in Part III.B. Rather, only Captain Lee's compliance with the SOP is barred by sovereign immunity.

[10] The Court notes that the plaintiff does not address this allegation in his supplemental briefing on sovereign immunity. *See* ECF No. 69.

### iii.   The plaintiff's claims based on insufficient training and failure to supervise are barred by sovereign immunity.

To the extent the plaintiff's claims are based on insufficient training and failure to supervise, those claims are barred by sovereign immunity.[11] There is no evidence in the record that there were specific policies or regulations controlling how the United States trains and supervises employees onboard the USNS Sisler. Thus, the record indicates that these decisions involve an element of judgment. And decisions on how to train and supervise employees are grounded in the type of policy that the discretionary function is designed to protect. *Robles*, 2021 WL 9869319 at *8; *see also Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (holding that training and supervising employees is a discretionary function.).

The plaintiff's unseaworthiness claim is based on the United States's "failure to provide adequate crew," and "fail[ure] to supervise and train the crew." ECF No. 17 ¶ 30; ECF No. 56 at 6 n.20 ("Plaintiff's unseaworthiness claims arise from the captain and other crew members' failure to ensure that [the plaintiff] was evaluated by a specialist, [u]nseaworthiness may arise from an unfit crew."). Thus, the Court lacks jurisdiction to reach the merits of the plaintiff's unseaworthiness claim.

### B.   The Plaintiff's Jones Act Negligence Claims

The plaintiff alleges that the defendant was negligent in three additional ways: (1) failing to discharge him to see a specialist; (2) delaying his necessary medical treatment; and (3) requiring him to work "despite his readily apparent need for

---

[11] Like the allegation of failure to properly staff, the plaintiff did not address these allegations in its supplemental briefing on sovereign immunity. *See* ECF No. 69.

follow-up." ECF No. 56 at 10, 12. In his response in opposition, the plaintiff alleges that the Clinic doctors' and Captain Lee's failure to discharge him to see a specialist and the ultimate delay of the necessary medical treatment were negligent. *Id.* at 10 ("Defendant – through its captain, crew, chosen medical providers and reliance on that provider – failed to provide [the plaintiff] with adequate medical treatment."). The Court finds that the plaintiff failed to properly plead the allegations against the Clinic doctors in his complaint and that there is no genuine dispute that Captain Lee breached his duty of care.[12]

### i. The plaintiff did not plead in his complaint that he received negligent care at the Clinic.

Fed. R. Civ. P. 8 (a) requires "a short and plain statement of the claim that the pleader is entitled to relief." One purpose of this pleading requirement is to "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Fair notice does not require specific or detailed factual allegations, but it does require some factual allegations that would allow a reasonable inference of both the claim and the ground for relief.

The complaint does not contain sufficient allegations to put the defendant on notice of medical negligence claim. The plaintiff's complaint broadly states that "[t]he United States, by and through its agents, servants, and employees acting within the scope of their employment were negligent in creating the dangerous conditions that proximately resulted in [the plaintiff]'s injuries in failing to provide adequate crew,

---

[12] To recover under the Jones Act, the plaintiff needs to demonstrate all four elements: duty, breach, cause, and damages. Because the Court finds that the defendant did not breach its duty of care, it declines to reach the other elements.

failing to supervise and train the crew, and in other respects." ECF No. 17 ¶ 28. The factual allegations in the complaint, however, are focused on Captain Lee's actions. *See e.g., id.* ¶ 12 ("Mr. Papania was returned to the Vessel despite his readily apparent need for further evaluation and care. Unfortunately, Captain Lee failed to discharge the plaintiff."). Although the complaint alleges that the plaintiff received care at the Clinic, *id.*, and his reported symptoms, *id.*, it notably does not include *any* facts outlining the care he received, or the relevant standard of care. The pleading requirements are liberal, but it is hard to see how a complaint that does not discuss the treatment the plaintiff received from a physician gives the defendant fair notice of a medical negligence claim. For these reasons, the Court finds that the plaintiff did not properly plead this theory of liability.

A case may not proceed to trial on "an unpleaded theory of recovery" without "express or implied consent of the parties." *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 401 (4th Cir. 1999); *see* Fed. R. Civ. P. 15(b)(2). In other words, the plaintiff must either amend the complaint or the parties must "constructively amend the complaint" by, for example, "agreeing . . . to litigate fully an issue not raised in the original pleadings," or by addressing an unpleaded theory of liability in "their summary judgment briefings." *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 227 (4th Cir. 2001) (quotations and citations omitted) (Wilkins, J., dissenting) (en banc). The plaintiff has not moved to amend the complaint, and it is certainly not the case that the defendant has consented to this theory of liability. *See* ECF No. 60 at 2

("The plaintiff has not alleged medical negligence in his complaint or discovery responses.").

Thus, it appears to the Court that the plaintiff is using his brief opposing summary judgment to amend his complaint. Courts in the Fourth Circuit have repeatedly held that is not permissible. *Brass v. SPX Corp.*, No. 3:14-cv-656, 2019 WL 7373785, at *3 (W.D.N.C. Dec. 31, 2019) (collecting cases). And "[c]ourts routinely refuse to consider legal theories not alleged in the complaint and raised for the first time in brief in opposition to a motion for summary judgment." *Id.* at 2. Because this theory of liability was not properly pleaded in the complaint, the Court will not allow the plaintiff to assert the theory as a means to avoid summary judgment.[13]

---

[13] Even if the Court were to allow the plaintiff to raise this theory now, the record shows that the plaintiff has failed to meet his evidentiary burden. To succeed on this claim, the plaintiff must demonstrate that the physician's care fell below the relevant standard. *See Adams v. Liberty Maritime Corp.*, 560 F. Supp. 3d 698, 721 (E.D.N.Y. 2020) (quoting *Fitzgerald v. A.L. Burbank & Co.*, 451 F.3d 670, 679 (2d Cir. 1971). The plaintiff avers that the applicable standard of care is that a patient with an orbital fracture must see a specialist within three weeks. ECF No. 56 at 9–10. That argument ignores the relevant question entirely. It is undisputed that the Clinic doctors failed to diagnose the plaintiff's orbital fracture. Therefore, the relevant question is not whether the Clinic doctor's failure to ensure that the plaintiff saw a specialist within three weeks fell below the standard of care. Rather, it is whether the failure to properly diagnose the orbital fracture did. Because there is no evidence in the record establishing the standard of care for diagnosing an orbital fracture, there is "no proper standard of care against which to measure the defendant's actions." *Adams*, 560 F. Supp. 3d at 721. Thus, the defendant would be entitled to summary judgment on this issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[T]here can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

### ii. There exists no genuine dispute as to Captain Lee's negligence.

The plaintiff alleges that Captain Lee was negligent in two regards: (1) requiring him to work despite having the plaintiff's not-fit-for duty report and (2) failing to discharge him to permit "adequate and timely medical care." ECF No. 17 ¶ 13. There is no genuine dispute as to either claim.

First, the undisputed facts show that Captain Lee complied with the Clinic's instructions. The plaintiff was injured on June 26, 2021. ECF No. 56 (PSOF) ¶ 1. He was then taken to the Clinic, where two doctors examined his injuries. ECF No. 45 (DSOF) ¶ 4. On June 28, 2021, Captain Lee contacted a Navy corpsman at the Clinic to inquire about the plaintiff's status and whether he was able to work. *Id.* ¶ 9. The Clinic did not provide any written documentation but stated that the plaintiff "should be fine to be underway." *Id.* at ¶ 8. On June 30, 2021, Captain Lee received a report from the Clinic stating that the plaintiff was not fit for duty. *Id.* ¶ 12. That day Captain Lee informed the plaintiff that he was not fit for duty, did not allow him to work, and scheduled a follow-up appointment.[14] *Id.* At all relevant times, Captain

---

[14] In an attempt to avoid summary judgment, the plaintiff alleges that Captain Lee "influenced and guaranteed a 'light duty'" release (ECF No. 56 (PSOF) ¶ 5) and denied the plaintiff specialist medical care due to fear that his injuries "could be an 'international incident'" (*id.* ¶ 11). Neither amounts to a genuine dispute of material fact. First, whether Captain Lee influenced the Clinic doctor's subsequent examination is immaterial because the Clinic doctors determined that medical evacuation was not necessary prior to any communication between Captain Lee and the Clinic. ECF No. 45 (DSOF) ¶ 6. Proof of the alleged interference does not change the fact that the Clinic doctors concluded, without this alleged influence, that medical evacuation was unwarranted. Second, the undisputed facts show that the plaintiff requested to see a specialist when he got home, *not* immediately. *Supra*, note 5. Thus,

Lee complied with the plaintiff's work restrictions as he understood them. At most, the evidence shows that the plaintiff worked for four days when the Clinic had deemed him not fit for duty, not that Captain Lee disregarded the Clinic's instructions.[15]

Next, the plaintiff alleges that Captain Lee negligently relied upon the Clinic doctors' diagnosis.[16] ECF No. 17 ¶ 14 ("[T]he defendant knew or should have known that [the plaintiff]'s injuries were beyond the scope of the health services provided at the Navy Clinic.").[17] The crux of the plaintiff's argument appears to be that Captain Lee should have known that the plaintiff required specialist care because of the severity of his injuries and his requests to see a specialist. ECF No. 56 at 10. The Court finds two cases instructive on this issue.

_____

there is no evidence supporting the plaintiff's allegation that he was denied specialist care.

[15] Even assuming that it was negligent for Captain Lee to allow the plaintiff to work without medical paperwork, the plaintiff's claim fails because this is not the cause of the alleged harm (residual double vision). At no point does the plaintiff allege that working aggravated his injury. Rather, he alleges that the delay in treatment did. Even if Captain Lee opted to not allow him to stand his watch, he would not have been evacuated to see a specialist.

[16] The Court notes that the plaintiff is attempting to walk a very tight rope. On the one hand, he is alleging that Captain Lee was negligent for *not* following the Clinic's instructions (the work restrictions) and, at the same time, *for* following the Clinic's instructions (not ordering air evacuation).

[17] The plaintiff's allegation broadly refers to "the defendant" without specifying exactly who is the subject of it. As discussed in Part III.B.i, *supra*, the Court found that the plaintiff did not properly plead a medical negligence claim against the Clinic doctors. Thus, the Court construes the plaintiff's allegation as directed towards Captain Lee, against whom he did properly plead a negligence claim.

In *Central Gulf S.S. Corp. v. Gulf Fleet Crews, Inc.*, 405 F.2d 291 (5th Cir. 1968), the seaman suffered an eye injury while ashore in Incheon, South Korea. *Id.* at 293. The captain then took him to a local doctor, who determined that it was safe for the seaman to sail with the ship. *Id.* The ship subsequently departed for Singapore with the injured seaman on board. *Id.* The district court determined, and the Fifth Circuit affirmed, that the captain's reliance on the local doctor was negligent because the doctor did not speak the same language as the seaman, the seaman's eye was so severely injured that "even a lay [person]" would "have recognized the possibility of internal eye damage," and there were at least three readily accessible ophthalmologists. *Id.*

In *Motts v. M/V Green Wave*, 210 F.3d 565 (5th Cir. 2000), a seaman was injured when a 3,000-pound cylinder fell on him while the ship was at sea. *Id.* at 567. The seaman informed the captain of pertinent medical information, but the captain did not relay that information to the physician who conducted the virtual examination. *Id.* The physician diagnosed the seaman with a soft-tissue injury and recommended that he be X-rayed as soon as possible. *Id.* at 567. The physician did not recommend evacuation. *Id.* at 573. The seaman's condition worsened, and the captain suspected that he had sustained a more serious injury. *Id.* at 568. However, the captain did not request that the seaman be X-rayed or treated by a nurse practitioner despite having access to both. *Id.* Nor did the captain request that the Coast Guard use an easily accessible helicopter to evacuate the seaman despite that being feasible and safe. *Id.* The Fifth Circuit found that the captain did not render

reasonable care because of the immediate proximity of a helicopter-equipped vessel, the availability of both an X-ray machine and a nurse practitioner, and because the captain knowingly withheld pertinent information from the physician.

Thus, the dispositive facts in both cases were: (1) an obvious indication that the doctor's examination was not sufficient, (2) obvious severity of the injury, and (3) easily accessible medical care. Of those three dispositive facts, only one is present in this case. The record before the Court shows that the plaintiff's eye was severely injured and that the plaintiff discussed his symptoms with Captain Lee. However, there is no obvious indication—like a language barrier or knowingly withheld pertinent information—that the examination the plaintiff received at the Clinic was insufficient.

The record also does not show any intervening factor, like in *Motts*, that would indicate as much. 210 F.3d at 568 (highlighting that the seaman's condition worsened and the ship captain suspected that the injury was more severe than initially suspected). The plaintiff's eye was obviously injured; however, the record shows that it steadily improved. ECF No. 56 at 10; ECF No. 60 at 8–9. Further, the record shows that the plaintiff told Captain Lee that he was able to stand his watch, and that he worked 86 hours of voluntary overtime during this period. ECF No. 60-6 (plaintiff's pay sheets); ECF No. 60-5 (deposition testimony stating that overtime is voluntary).

The plaintiff alleges that he repeatedly requested to see a specialist. However, the undisputed facts indicate that he requested to see a specialist when returned

home, *not* immediately.[18] The plaintiff saw a specialist upon his return to the United States. ECF No. 45 (DSOF) ¶ 15. Thus, there is no evidence in the record that Captain Lee was aware that the plaintiff desired immediate specialist care. Nor is there any evidence that Captain Lee denied the plaintiff the medical care he requested.

Importantly, the undisputed facts indicate that there were no easily accessible ophthalmologists. As the Fifth Circuit noted, the duty to provide medical care "varies with the nature of the injury and the relative availability of medical facilities." *Sambula*, 405 F.2d at 300. In *Motts*, the ship captain was negligent because he did not request treatment for the patient despite having access to both an X-ray machine and a nurse practitioner. 210 F.3d at 568. In *Sambula*, the combination of the obvious severe eye injury with readily accessible ophthalmologists—two in Incheon and one at the U.S. Army Hospital 30 minutes away—meant that the duty was "not satisfied by the calling of a competent general practitioner." 405 F.2d at 300. Here, while the injury was undoubtedly severe, there is no evidence in the record of an easily accessible ophthalmologist.

For the plaintiff to be successful, the jury would have to find that it was negligent for Captain Lee to have the plaintiff treated at the only medical facility on Diego Garcia, and that—despite there being no obvious indication that the care he

---

[18] To support his argument, the plaintiff cites to a declaration submitted in connection with his response in opposition, wherein he states that he "repeatedly requested [to] see a specialist because [he] was worried that [his] eye would be permanently damaged." ECF No. 56-6 ¶ 8. For the reasons stated previously, the Court finds that it is undisputed that the plaintiff requested to see a specialist when he got home. *Supra*, note 5.

received was insufficient—it was negligent for Captain Lee to rely on the expertise of medical professionals. *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (explaining that "non-medical professional defendants" are "entitled to rely on the medical professionals' determination" absent an indication that the medical care is insufficient). That is not a genuine dispute, and thus, summary judgment for the defendant is appropriate. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

## C.   The Plaintiff's Maintenance & Cure Claim

The plaintiff alleges that he was denied maintenance and cure because the defendant "failed to provide [him] with necessary and timely medical care to avoid further injuries." ECF No. 17 ¶ 33. The duty to provide cure is two-fold: (1) a duty to pay all reasonable and necessary medical expenses associated with the injury and (2) the duty to provide reasonable and necessary medical care. The critical difference between Jones Act negligence and maintenance and cure is that the seaman is not required to show negligence or fault on the part of the shipowner to recover maintenance and cure benefits. *Prendis v. Central Gulf S.S. Co.*, 330 F. 2d 893, 896 (4th Cir. 1963) ("As to the claim for maintenance and cure for the injuries, no showing of negligence or unseaworthiness need be made."). Put differently, all a plaintiff needs to show is that they were injured in the course of their employment and their employer either did not pay their necessary medical costs or denied them reasonable

medical care. The plaintiff makes no claim for payment of medical bills because of the injury he sustained in the course of his employment.

The plaintiff's Jones Act claim is based on the defendant's failure to provide adequate cure. ECF No. 56 at 6 n. 21 ("Plaintiff's negligence claim is based on Defendant's failure to ensure that [the plaintiff] was evaluated by a specialist, ophthalmologist in light of the severity of his injury. . . a seaman [has] a cause of action against his ship for the negligence of the master in the discharge of the ancient duty to provide maintenance and cure."). As discussed in Part III.B., based on these factual circumstances, the medical care that the defendant provided the plaintiff was reasonable. Because the defendant provided the plaintiff with reasonable medical care, and the plaintiff has made no claims for medical bills associated with the injury, there is no genuine dispute of material fact that the plaintiff was denied maintenance and cure benefits.

## IV.    CONCLUSION

For the reasons stated herein, the Defendant United States of America's Motion for Summary Judgment (ECF No. 44) is **GRANTED**.

Judgment is hereby entered in favor of the Defendant United States of America, and this case is **DISMISSED WITH PREJUDICE.**

Plaintiff may appeal this Memorandum Opinion and Order by forwarding a written notice of appeal to the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be

received by the Clerk within 60 days of the date of entry of this Memorandum Opinion and Order.

It is **FURTHER ORDERED** that the Defendant United States of America's Motion to Dismiss (ECF No. 20) and Motions in Limine to Exclude Expert Testimony (ECF Nos. 46, 62) are **DENIED AS MOOT.**

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____ /s/ _____

Jamar K. Walker
United States District Judge

Norfolk, Virginia
February 6, 2024